## COUGHLIN v. DISTRICT OF COLUMBIA.*

---

HIGHWAYS; SIDEWALKS; MUNICIPAL REGULATIONS; SNOW AND ICE, REMOVAL OF, FROM SIDEWALKS.

1. The police regulation promulgated by the commissioners of this District February 8, 1905, requiring the removal by individual citizens of snow and ice from the sidewalks of the city of Washington, within the fire limits, and providing a penalty for failing to do so, is null and void, not having been authorized by Congress.

2. Under the act of Congress of January 26, 1887, 24 Stat. at L. 368, chap. 48, and the joint resolution of Congress of February 26, 1892, 27 Stat. at L. 394, the commissioners of the District of Columbia have the power to make police regulations only, and not to impose duties upon citizens, such as the removing of snow and ice from the sidewalks.

3. Congress having reserved to itself, not only the power to legislate generally for the District of Columbia, but also the power to enact municipal ordinances for the District, such as are within the ordinary scope of the authority of incorporated municipalities, and having delegated to the commissioners of the District, who are not the municipality, but only its executive agents, the power to make police regulations, such as are usually and commonly known by that designation, it is not to be inferred from the fact that various municipalities have made valid regulations providing for the removal by individual citizens of snow and ice from their sidewalks, that a similar power exists in the commissioners of the District of Columbia to make such regulations.

4. The procurement by the commissioners of this District (which may be inferred from the well-known usage of the committees of Congress in that regard) of legislation by Congress providing for the removal by citizens of snow and ice from the sidewalks of the city of Washington; and leg-

---

*See *Lee* v. *District of Columbia, post,* 388.   [Reporter.]

islation by Congress which has been judicially declared void upon the same subject,—coupled with the fact that no express authority has been given the commissioners to make such regulation, is sufficient to charge the commissioners with knowledge of their incapacity to enact such legislation under the guise of police regulation, and to show that Congress reserved the subject for legislation by itself.

5. The duty is upon the District of Columbia itself to cause the removal of snow and ice from the sidewalks of the city of Washington, as it is its duty to remove any other obstructions; and it is not competent for the commissioners by police regulation to remove that burden from themselves as agents of the municipality, and impose it upon individual citizens.

No. 1519.   Submitted March 8, 1905.   Decided March 22, 1905.

IN ERROR to the Police Court of the District of Columbia.
                                              *Judgment reversed.*

The facts are sufficiently stated in the opinion.

*Mr. George E. Hamilton, Mr. Michael J. Colbert,* and *Mr. John J. Hamilton* for the plaintiff in error.

*Mr. Andrew B. Duvall,* Corporation Counsel, and *Mr. F. H. Stephens,* Assistant, for the defendant in error.

Mr. Justice MORRIS delivered the opinion of the Court:

This is understood to be a test case to determine the validity of a certain regulation made and promulgated by the commissioners of the District of Columbia on February 8, 1905, for the removal of snow and ice from the paved sidewalks of the District within what are called the fire limits.   The regulation is in the following words:

"The tenant or occupant of any building or lot of land, or, in case there shall be no tenant or occupant, the owner of any building or lot of land fronting or abutting on any paved sidewalk within the fire limits of the District of Columbia, and in the case of any building or lot of land owned by any corporation, joint-stock company, or syndicate, the superintendent, manager, or other person in charge or control of such building

or lot of land, shall, within the first four hours of daylight after the ceasing to fall of any snow, cause the same to be removed from such sidewalk; and in case ice has formed upon such sidewalk the tenant, occupant, owner, superintendent, manager, or other person in charge or control of such building or lot of land, as above set forth, shall, within the first four hours of daylight after the same has formed, caused the same to be sprinkled with ashes or some other suitable substance.

"Any violation of any of the provisions of this regulation shall subject the person so offending to a fine of not more than $5, or, in the default of the payment of such fine, to imprisonment in the workhouse of the District of Columbia for not more than five days."

The plaintiff in error, Cecilia M. Coughlin, is the owner of some vacant and unimproved lots in square 735, in the city of Washington, fronting on Second street Southeast; and after a fall of snow on February 9, 1905, failed to remove such snow from the paved sidewalks in front of said lots within the first four hours of daylight ensuing thereafter. For this failure she was arraigned in the police court, and adjudged to be guilty, and a fine of $5 was imposed. A writ of error has been sued out from this court to review the judgment.

The regulation cited is stated to have been copied from an old municipal ordinance of the city of Washington; and authority for its resurrection and re-enactment by the commissioners of the District is claimed to be found in the act of Congress of January 26, 1887, 24 Stat. at L. 368, chap. 48, and in the joint resolution of Congress of February 26, 1892, 27 Stat. at L. 394. But no such authority can reasonably be claimed under the act of 1887, which is specifically restricted to eleven distinct subjects of regulation, of which the removal of snow and ice from the streets of the District is not one. They have reference mainly to the orderly use of the streets by vehicles, droves of animals, or animals running at large, to the charges to be made by hackney carriages, and to the use and storage of inflammable materials. They look mainly to the maintenance of order on the public streets, and to the enactment of regu-

lations, in the strictest sense of that word, and not to the imposition of any duty upon individual citizens.

The joint resolution of 1892 is considerably broader in its scope; and under it we have held as valid various regulations promulgated by the commissioners. But it is very clear that even under this broad grant of authority, which empowers the commissioners to make all such reasonable and usual police regulations, in addition to those already made under the act of 1887, as they might deem necessary for the protection of lives, limbs, health, comfort, and quiet of all persons and the protection of all property within the District of Columbia, it is regulation, not legislation, that is authorized; the reasonable regulation of the exercise of right, not the imposition of a duty; the usual police regulation for the maintenance of public order, not the levying of a tax either in the way of enforced labor or in the way of the purchase of materials for sprinkling the sidewalks. Whatever power the legislature itself may have in the premises, certainly it is not to be presumed to have granted such plenary authority as is here claimed under the joint resolution of 1892.

That various municipalities may have exercised such power, as appears from various municipal ordinances collated in the brief on behalf of the appellee, is not to the point. Municipalities are usually vested with quasi legislative powers, among them the sovereign power of taxation and assessment, and from the fact that municipal ordinances are elsewhere to be found, analogous to the so-called regulation here in question, it is not to be inferred that similar powers exist in the commissioners of the District of Columbia. The commissioners are not the municipality, but only the executive organs of it; and Congress has reserved to itself, not only the power of legislation in the strict sense of the term, which it cannot constitutionally delegate to anyone or to any body of men, but even the power of enacting municipal ordinances, such as are within the ordinary scope of the authority of incorporated municipalities. It has delegated to the commissioners simply the power of making

"police regulations," and only such police regulations as are usual and commonly known by that designation.

That Congress has not conferred upon the commissioners of the District of Columbia the authority to require of owners and occupants of property in the District the removal of snow and ice from the sidewalks in front of their premises is very plain, not only from the absence of any such grant of authority from the statute book, but still more clearly from the fact that, subsequently to the enactment of the joint resolution of 1892, it expressly legislated itself on this precise subject on at least three several occasions.  And we are warranted by the well-known usage of the committees of Congress in this regard, in the statement that the legislation was by the procurement of the commissioners, and with the knowledge of their own incapacity to enact such legislation under the guise and pretense of regulation.

"An Act for the Removal of Snow and Ice from the Sidewalks, Cross walks, and Gutters in the Cities of Washington and Georgetown, and for Other Purposes" (28 Stat. at L. 809, chap. 178), was passed by Congress on March 2, 1895, by which it was sought to deal with the whole subject-matter.  It provided that owners or occupants of private property should remove the snow and ice from the sidewalks in front of their premises; that the commissioners of the District should remove such deposit from the cross walks, that is, from the crossing places of the streets and alleys, and from the gutters, and that the superintendent of public buildings and grounds, if he had any money in his hands for the purpose, should clear the sidewalks adjacent to the public parks from ice and snow.  There is no provision in the act for the removal of the deposit from the sidewalks adjacent to the public buildings, and there seems to have been no very serious attempt on the part of the public authorities, either national or municipal, to comply with the requirements of the act.

The act of 1895 appears to have been deemed insufficient; and again, no doubt at the instance of the commissioners, Congress legislated on the subject, and passed the act of March 2

1897, 29 Stat. at L. 608, chap. 361, which was substantially no
more than a re-enactment of the act of 1895, with the omission
of the section in regard to the superintendent of public build-
ings and grounds,—for what reason does not appear,—and with
the addition of "agents" to owners and occupants of land, ap-
parently with the intention of reaching the cases, rather numer-
ous in this city, where property is owned by nonresidents. This
latter act, which substantially covered the same ground as the
act of 1895, with the exception of the provision relating to the
superintendent of public buildings and grounds, did not in
terms purport to repeal the previous act. It was the act of 1897
that was before us in *Holtzman* v. *United States,* 14 App. D.
C. 454, in which we held, as to the special feature that
differentiated it from the act of 1895, that it was null and void,
and we at the same time pointed out various crudities, incon-
sistencies, and inequalities that tended to discredit it in its en-
tirety.

Presumably to cure the defects thus pointed out, Congress
again legislated on the subject, and by an act of February 10,
1904, 33 Stat. at L. 12, chap. 156, most elaborate in its details,
sought to remove some of the most objectionable features of the
act of 1897, and to reach the owners of unimproved property,
as well as the owners and occupants of improved property. It
expressly repealed the act of 1897, but made no reference to the
act of 1895, and it was curiously remarkable for its omission of
the provision in the acts of 1895 and 1897, whereby the com-
missioners were required to remove the snow and ice from the
cross walks and gutters. Thus progressively were eliminated,
first, the provision requiring in a limited and ineffective manner
the superintendent of the public buildings and grounds to re-
move the snow and ice from the sidewalks adjoining the public
parks, and, secondly, the provision requiring the commission-
ers to remove the snow and ice from the cross ways and gutters,
while the individual citizen was sought to be coerced by heavier
penalties to do the same thing with reference to his own
property.

This act of 1904 was before us in the case of *McGuire* v.

*District of Columbia,* 24 App. D. C. 22; and we held it to be, if possible, more objectionable than the act of 1897, and, with the exception of the section which repealed the act of 1897, to be wholly null and void.

These repeated attempts at legislation, however ineffectual in their result, are sufficient to show that Congress reserved this subject for itself, and did not confer upon the commissioners the power to regulate it.

The decision in the *McGuire Case* was rendered on May 24, 1904, and there was ample opportunity for application to Congress for legislation that would be free from objection. But the third and last session of the Fifty-eighth Congress was permitted to come and go, so far as we are advised, without any effort whatever on the part of the District authorities to procure any such legislation. At all events, there has been no such legislation. Instead of an application to Congress there has been this ill-advised resurrection of an old municipal ordinance, and the promulgation of it by the commissioners as a regulation of their own, intended to effect what three several acts of Congress had failed to effect. We cannot but regard it as a plain usurpation of the powers of Congress.

Congress has imposed upon the municipal authorities of the District of Columbia the duty of caring for the streets, avenues, and alleys, and the highways of the District, and of keeping them free from obstructions; and this duty extends to the sidewalks, as well as to the carriageways. In this regard there is no distinction whatever between the two. Whatever be the cause of such obstructions, whether they be caused by the elements, or purposely or negligently by human instrumentality, the duty is still incumbent on the municipality of removing them at the earliest practicable moment. We presume that if the sidewalks were washed away by an extraordinary downfall of rain, or were sunk through some subsidence of the earth, it would be the duty of the municipality to repair the defect with the least possible delay. If stones or earth or gravel were thrown upon the sidewalk by a careless or inconsiderate person, it would be the duty of the municipality to remove such ob-

structions, or cause them to be removed by the person who caused them. In no one of these cases could the municipality evade the performance of its own plain duty by requiring an adjacent owner of property to perform it. This is an elementary proposition, which no one can seriously dispute. Is it different when an obstruction of the highway occurs through the accumulation of snow and ice on the traveled highways of the District? It is true that this obstruction differs from the others that have been mentioned, in its magnitude and wide extent, in the comparative frequency of its occurrence, and the palpable necessity for its speedy removal. But these are circumstances that do not affect the liability of the municipality, if the liability has been imposed upon it, but only grounds for the consideration of the law-making power when it comes to deal with the subject. The accumulation of snow and ice is as much of an obstruction on the public highways as is a washout or a sinking of the earth, and in the absence of congressional legislation the municipality cannot relieve itself from its duty with reference to the one any more than from its duty with reference to the other. That Congress may so relieve it, if it thinks proper, must of course be conceded, and we have never held that, by a just and equal law, adequate to the purpose, it may not impose that duty upon individual citizens. At the instance of the commissioners, it has been sought so to relieve the municipality to a certain extent from that duty by the acts of Congress that have been cited. But if those acts have failed fully to accomplish the purpose, it does not follow that the commissioners may take the law into their own hands and by an illegal ordinance attempt to shift the burden.

We are of opinion that as the law now stands Congress alone, and not the commissioners, have the authority to regulate the removal of snow and ice from the paved sidewalks, crossings, and other traveled spaces of the public highways of the District; that, as the law now stands, the duty is upon the municipality itself to cause such removal; and that it is not competent for the commissioners by any regulation whatever which they may adopt to remove that burden from themselves as the responsible

agents of the municipality, and impose it upon individual citizens.

We are of opinion that the regulation under which the plaintiff in error was prosecuted in the police court is an illegal exercise of authority and unwarranted by any power conferred by Congress upon the commissioners. Several inherent defects have been pointed out in it; but these it is unnecessary to consider, since the whole regulation must fail for want of authority to make it.

The judgment of the Police Court in the premises will be reversed, with costs; and the cause will be remanded to that court, with directions to vacate such judgment and to discharge the defendant. And it is so ordered.                    *Reversed.*

A motion by the appellee to recall the mandate was overruled April 6, 1905.